1  Chant Yedalian, State Bar No. 222325
   (chant@chant.mobi)
2  CHANT & COMPANY
   A Professional Law Corporation
3  10866 Wilshire Blvd., Suite 400
   Los Angeles, CA 90024
4  Phone: 424.901.8377
   Fax: 424.744.4177
5  Counsel for Plaintiff

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  BRENT SAKAMOTO, on behalf of        )   Case No. SACV11-1249 JVS (MLGx)
                                        )
12  himself and all others similarly situated, )   **NOTICE OF MOTION AND
                                        )   MOTION FOR PRELIMINARY
13                          Plaintiff,  )   APPROVAL OF CLASS ACTION
                                        )   SETTLEMENT**
14  v.                                  )
                                        )   [Filed concurrently with (1) Declaration
15  ONE PARKING, INC.; ONE              )   of Henry Rodriguez; (2) Declaration of
    PARKING AGW, INC.; CITIGROUP        )   Chant Yedalian; and (3) [Proposed]
16  GLOBAL MARKETS REALTY               )   Order, lodged herewith]
    CORP.; and DOES 1 through 10,       )
17  inclusive,                          )   **HEARING**
                                        )   Date:   April 2, 2012
18                          Defendants. )   Time:  1:30 p.m.
                                        )   Courtroom: 10C
19  _____    )   Judge: Hon. James V. Selna

20

21

22

23

24

25

26

27

28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

2         PLEASE TAKE NOTICE THAT on April 2, 2012 at 1:30 p.m., or as soon

3    thereafter as the matter may be heard before the Honorable James V. Selna, in

4    Courtroom 10C, located at 411 West Fourth Street, Santa Ana, California 92701,

5    Plaintiff Brent Sakamoto, on behalf of himself and on behalf of the proposed

6    Settlement Class, will and hereby does move the Court, pursuant to Federal Rules of

7    Civil Procedure Rule 23, for an Order granting preliminary approval of the proposed

8    class action settlement on the terms and conditions set forth in the Settlement

9    Agreement And Release (hereinafter sometimes referred to as "Settlement" or

10   "Agreement"), a copy of which is attached hereto as Exhibit 1.[1]

11        Plaintiff further moves the Court for an Order:

12        1.    Certifying the Settlement Class for settlement purposes;

13        2.    Appointing Plaintiff Brent Sakamoto as the Class Representative for

14              the Settlement Class;

15        3.    Appointing attorney Chant Yedalian of Chant & Company A

16              Professional Law Corporation as Class Counsel for the Settlement

17              Class;

18        4.    Approving the proposed notice to the Settlement Class, including the

19              Short-Form Notice, Long-Form Notice, and Opt-Out Form attached to

20              the Agreement as Exhibits B, C and D, respectively;

21        5.    Directing notice to be made to the Settlement Class as described in the

22              Agreement;

23        6.    Preliminarily approving the Settlement subject to final review by the

24              Court;

25

26

27

---

28   [1]  Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

7.   Establishing deadlines for Settlement Class members to submit a request for exclusion from the Settlement and to submit objections to the Settlement; and

8.   Setting a final approval and fairness hearing on a date that is approximately 90 days after the Court grants preliminary approval of the Settlement.

This Motion is based upon this Notice of Motion and Motion and Exhibits attached hereto, the Declarations and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

Dated:  March 5, 2012                    CHANT & COMPANY
                                         A Professional Law Corporation


                                         By:   /S/ – Chant Yedalian
                                               Chant Yedalian
                                         Counsel for Plaintiff Brent Sakamoto

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION……………………………………………………….1

II.    FACTUAL SUMMARY OF THE CASE………...……………….…….1

III.   THE PARTIES SETTLEMENT NEGOTIATIONS, INCLUDING
       THE  SETTLEMENT CONFERENCE WITH MAGISTRATE
       JUDGE GOLDMAN………………………………………………….2

IV.    THE SETTLEMENT…………………………………………3

V.     THE SETTLEMENT CLASS……………………………….…………..6

       A.    Numerosity……………………………………..……………..6

       B.    Commonality……………………………………..………...…..7

       C.    Typicality…………………………………………....……….8

       D.    Adequate Representation ……………….…..………………..9

       E.    Rule 23(b)(3) Requirements Are Met ……………….…..…...…10

             1.    Predominance of Common Questions…………………10

             2.    Superiority……………………………..…..…………10

VI.    THE TWO-STEP APPROVAL PROCESS……………..………………12

VII.   THE PRESUMPTION OF FAIRNESS…………………..……………14

VIII.  THIS SETTLEMENT IS FAIR AND REASONABLE……………..…...15

       A.    Risks of Continuing Litigation…..…………………...……16

             1.    "Willfulness"……………………………………………16

             2.    Class Certification………………..…………………16

             3.    Constitutional Challenges……………………………...17

       B.    Substantial Benefits of Settlement Compared to the Risks
             of Continued Litigation…………………………..……………17

       C.    Agreement Provides That Change Of Law Before Final
             Approval of Settlement Will Not Compromise Settlement
             Class Members' Benefits..…………………………………19

       D.    The Settlement Is The Product of Extensive Arm's-
             Length Negotiations……………………………………..20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

IX.  THE PROPOSED CLASS NOTICE SHOULD BE APPROVED…………..20

X.  MODEST ATTORNEY'S FEES WILL BE SOUGHT IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT…………...…..……...22

XI.  A MODEST ENHANCEMENT AWARD WILL BE SOUGHT FOR THE NAMED PLAINTIFF IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT…….………………………...……..24

XII.  CONCLUSION………………………………………………………...25

# <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>                                                                     Page(s)

*Amchem Products Inc. v. Woodward*
    521 U.S. 591 (1997)……………………………………………………11

*Armstrong v. Board of School Directors of the City of Milwaukee*
    616 F.2d 305 (7th Cir. 1980)……………………..………………………..13

*Bateman v. American Multi-Cinema, Inc.*
    623 F.3d 708 (9th Cir. 2010)………………………………………...16-17

*Battle v. Liberty National Life Ins. Co.*
    770 F.Supp. 1499 (N. D. Ala. 1991)……………………………………...21

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975)……………………………………………….7

*Cal. Rural Legal Assistance, Inc. v. Legal Sevs. Corp.*
    917 F.2d 1171 (9th Cir. 1990)……………………………………………. 8

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992)…………………………………………….12

*Craft v. County of San Bernardino*
    624 F.Supp.2d 1113 (C.D. Cal. 2008)……………………………….19, 23

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974)……………………………………………………..6

*Elkins v. Equitable Life Ins. of Iowa*
    1998 WL 133747 (M.D. Fla. 1998)……………………………………….12

*First American Financial Corporation, et al., v.*
*Denise P. Richards, et al.*
    United States Supreme Court No. 10-708………………………………...19

*Hammon v. Barry*
    752 F.Supp 1087 (D. D.C. 1990)………………………………………...14

*Hanlon v. Chrysler Corp.*
    140 F.3d 1011 (9th Cir. 1998)……………………………………7, 8, 9, 10

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992)……………………………………………..8

*Ingram v. The Coca-Cola Co.*
    200 F.R.D. 685 (N.D. Ga. 2001)……………………………..…………..24

*In re Activision Securities Litigation*
    621 F.Supp. 415 (N.D. Cal. 1985)…………………………………....9

*In re Alcoholic Beverages Litigation*
    95 F.R.D. 321 (D.C. N.Y. 1982)……………………………………….6

**Page(s)**

*In re Cendant Corp., Derivative Action Litigation*
    232 F.Supp.2d 327 (D. N.J. 2002)…………………………..……………19

*In re Chicken Anti-Trust Litigation*
    560 F.Supp 957 (N.D. Ga. 1980)……………………………………...14

*In re Computer Memories Sec. Litig.*
    111 F.R.D. 675 (N.D. Cal. 1986)……………………………………….6

*In re Heritage Bond Litigation*
    2005 WL 1594403 (C.D. Cal. 2005)……………………………………...19

*In re Michael Milken & Assocs. Sec. Litig.*
    150 F.R.D. 57 (S.D.N.Y. 1993)……………………………..…………22

*In re Pacific Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)……………...…………………………12, 14

*In re Portal Software, Inc. Sec. Litig.*
    2007 U.S. Dist. LEXIS 51794 (N.D. Cal. 2007)……………………………13

*Jordan v. Los Angeles*
    669 F.2d 1311 (9th Cir. 1982)…………………………...6, 7

*Local Joint Exec. Bd. of Culinary/Bartender*
*Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001)………………………………………...9-10

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
    834 F.2d 677 (7th Cir. 1987)……………………………….…..……..14

*Mendoza v. United States*
    623 F.2d 1338 (9th Cir. 1980)……………………….…………………22

*Mirfasihi v. Fleet Mortgage Corp.*
    356 F.3d 781 (7th Cir. 2004)…………………….……………..…………21

*Mullane v. Central Hanover Bank & Trust Co.*
    339 U.S. 306 (1950)………………………………………………………20

*Murray v. GMAC Mortgage Corp. ("Murray II")*
    2007 WL 1100608 (N.D. Ill. 2007)……………………………………9, 12

*Nat'l Rural Telecomm. Coop. v. DirecTV*
    221 F.R.D. 523 (C.D. Cal. 2004)……………………………..……14, 15

*Officers for Justice v. Civil Service Commission of*
*City and County of San Francisco*
    688 F.2d 615 (9th Cir. 1982)…..……………………………………...15, 18

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985)………………………………………………………11

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**Page(s)**

*Priddy v. Edelman*
    883 F.2d 438 (6th Cir. 1989)……………………………………………..14

*Silber v. Mabon*
    18 F.3d 1449 (9th Cir. 1994)……………………………………………..20

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*
    79 F.R.D. 571 (E.D. Pa. 1978)……………………………………………..14

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003)………………………….....………6, 15

*Steinberg v. Carey*
    470 F.Supp. 471 (S.D. N.Y. 1979)………………………………………14

*Strube v. American Equity Life Ins. Co.*
    226 F.R.D. 688 (M.D. Fla. 2005)…………………………………………12

*Tchoboian v. Parking Concepts, Inc.*
    2009 WL 2169883 (C.D. Cal. 2009)……………………………………..7-8

*Valentino v. Carter-Wallace*
    97 F.3d 1227 (9th Cir. 1996)……………………………………………10

*Wang v. Chinese Daily News*
    231 F.R.D. 602 (C.D. Cal. 2005)…………………………………………..6

*Zinser v. Accufix Research Institute, Inc.*
    253 F.3d 1188 (9th Cir. 2001)…………………………………………..10

**<u>Federal Statutes</u>**

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA") …………....……8, 12

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")……………………………………..…*passim*

15 U.S.C. § 1681n.……………………………………………..……………...2, 8, 16

**<u>Federal Rules of Civil Procedure ("FRCP")</u>**

FRCP Rule 23……………………………………………………………………..6

FRCP Rule 23(a)………………………………………………………………..6

FRCP Rule 23(a)(1)…………………………………………………………..6

FRCP Rule 23(a)(2)…………………………………………………………..7

1

<strong>Page(s)</strong>

2

3

FRCP Rule 23(a)(3)………………………………………….…………….………..8

4

FRCP Rule 23(a)(4)………………………………………………………….……..9

5

FRCP Rule 23(b)(3)………………………………….………....…6, 10, 11, 12, 20

6

FRCP Rule 23(b)(3)(A), (B) and (C)…………………………………………….11

7

FRCP Rule 23(c)(3)…………………………………………………………….......22

FRCP Rule 23(c)(2)(B)…………………………………………….....20, 21, 22

8

FRCP Rule 23(e)………………………………………….....……..….3, 12, 13, 15

9

10 **<u>Other Authorities</u>**

11 *Newberg on Class Actions*, 4th Ed………..……………..………………….13, 14

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

After extensive negotiations, including the assistance of the Honorable Magistrate Judge Marc L. Goldman, the Parties have reached a proposed class-wide Settlement of this lawsuit.

Plaintiff Brent Sakamoto, on behalf of himself and on behalf of the Settlement Class, hereby respectfully moves for an Order granting preliminary approval of the proposed Settlement.

### II.     FACTUAL SUMMARY OF THE CASE

Plaintiff Brent Sakamoto was a customer of a parking facility for a shopping mall called GardenWalk.  The parking facility ("GardenWalk Parking Facility") is located at 321 West Katella Avenue in Anaheim, California, within walking distance to Disneyland and the Anaheim Convention Center.

In July 2011, Mr. Sakamoto paid for parking at the GardenWalk Parking Facility using his debit card.  After making his payment, the attendant at the GardenWalk Parking Facility provided Mr. Sakamoto with a customer receipt for his payment.  That receipt displays the first 12 digits of Mr. Sakamoto's debit card number (*i.e.*, more than the last 5 digits of his debit card number are printed on the receipt).

The Fair and Accurate Credit Transactions Act ("FACTA"), which is a subset of the Fair Credit Reporting Act, provides that any merchant which accepts credit cards or debit cards is prohibited from printing on electronically printed receipts "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."  15 U.S.C. § 1681(c)(g).  A merchant who "willfully" fails to comply with FACTA after December 3, 2006 is liable for (1) actual damages, if any, or statutory damages of

not less than $100 and not more than $1,000, (2) punitive damages as may be awarded by the court, and (3) attorney's fees and costs.  15 U.S.C. § 1681n.

Mr. Sakamoto commenced this Action on August 22, 2011 by filing a proposed class action Complaint against One Parking, Inc. and One Parking AGW, Inc. (collectively "One Parking").[2]   Docket #1: Complaint.

The Complaint alleges that after December 3, 2006, and within two years from the date of filing the Action, One Parking willfully violated the Fair and Accurate Credit Transactions Act ("FACTA") by, *inter alia*, printing more than the last five digits of the credit or debit card number on electronically printed customer receipts provided to cardholders transacting business with One Parking at the GardenWalk Parking Facility.  Docket #1: Complaint at ¶¶ 34-35.

One Parking denies any liability or wrongdoing of any kind associated with the claims alleged in Mr. Sakamoto's Complaint, and further denies that, for any purpose other than settling this lawsuit, this Action is appropriate for class treatment.[3]  Agreement ¶ 4.

## III. THE PARTIES SETTLEMENT NEGOTIATIONS, INCLUDING THE SETTLEMENT CONFERENCE WITH MAGISTRATE JUDGE GOLDMAN

The proposed Settlement was reached after extensive discussions among the Parties over the course of several months, which included the assistance of the Honorable Magistrate Judge Marc L. Goldman before whom the Parties held a Settlement Conference on January 25, 2012.  Among other things, Magistrate Judge Goldman (1) required multiple written settlement exchanges among the Parties; (2) required briefs reporting the Parties' exchanges and status of negotiations; and (3)

---

[2] CitiGroup Global Markets Realty Corp. was also a named defendant but was dismissed without prejudice on October 9, 2011.  Docket #10.

[3] Mr. Sakamoto filed his Motion for Class Certification on November 14, 2011 but the hearing thereon did not take place, and was continued several times, to allow the parties to continue their settlement discussions.

required the Parties and their representatives to attend an in-person Settlement Conference where much progress was made.  Yedalian Declaration ¶¶ 2-6.  The Parties commenced their negotiations before participating in the exchanges required by Magistrate Goldman and also continued their discussions after the January 25, 2012 Settlement Conference.  Yedalian Declaration ¶¶ 2-6.

The Settlement Agreement And Release (herein sometimes referred to as "Settlement" or "Agreement"), a copy of which is attached hereto as Exhibit 1,[4] is the product of the substantial arm's-length negotiations of the Parties which spanned from November 2011 to March 2012.  It was preceeded by several earlier drafts, term sheets and many communications both written and oral among the Parties. Yedalian Declaration ¶ 7.

## IV.   THE SETTLEMENT

Subject to the Court's approval pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23(e), the Parties have agreed to settle this matter upon the terms and conditions set forth in the Agreement.

A summary of the terms of the Settlement is as follows:

- For the purposes of the Settlement, the Parties have stipulated to the certification of the following Settlement Class: "All consumers who, from July 1, 2010 through August 24, 2011, paid for parking at the GardenWalk parking facility (located at 321 West Katella Avenue in Anaheim, California) using their credit or debit card, and were provided with an electronically printed customer receipt containing more than the last five digits of their credit or debit card number." Agreement  ¶ 6.

- One Parking will provide 17 days of free parking to the general public (consisting of 9 Thursdays and 8 Sundays in August and September 2012) at the

---

[4]   Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

GardenWalk Parking Facility.[5]  Agreement  ¶ 7(a).  There is absolutely no proof or claim requirement to obtain this benefit and spaces will be permitted to fill on a first-come-first served-basis until they are occupied and be permitted to be re-filled on a first-come-first-served basis as vacancies occur.   Agreement  ¶ 7(a).

•       There are a total of 2,606 parking spaces at the GardenWalk Parking Facility, at least 2,300 of which will be made available for parking to the general public on each of the free parking days.  Agreement  ¶ 7(a).

•       The regular daily maximum parking charge is $24.00.   Rodriguez Declaration ¶ 6.

•       Class members may use the benefit more than once per each free parking day, and during every single one of the 17 free parking days, should any of them so desire.

•       As a result of this lawsuit, the GardenWalk Parking Facility ceased printing more than the last 5 digits of credit and debit card numbers on customer receipts.  Rodriguez Declaration ¶ 3.

•       One Parking has also agreed that they shall implement a written policy stating they will not print more than the last five digits or expiration date of a credit or   debit   card   on   any   printed   receipt   provided   to   a   customer   of the GardenWalk Parking Facility.  Agreement  ¶ 7(b).

•       From July 1, 2010 through August 24, 2011, One Parking estimates that 4,752 to 5,483 debit and credit card receipts may have been printed at the GardenWalk Parking Facility which may contain more than the last 5 digits of the card number.  Rodriguez Declaration ¶ 4.

---

[5] In the event that the free parking dates are required to be changed because the GardenWalk Parking Facility must be made accessible to the City pursuant to contract for convention event attendees, or a delay in obtaining final approval of the Settlement, the Parties have worked in a contingency provision in their Agreement to ensure that alternate dates are made available and that a total of 17 days of free parking are provided.  Agreement  ¶ 7(a).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

• One Parking does not know, nor does One Parking have access to any information which would enable One Parking to determine, the identities of absent Settlement Class members.  Rodriguez Declaration ¶ 7.  The Parties have therefore agreed that notice to the Settlement Class members will be given in the following ways: A Short-Form notice in the form attached to the Agreement as Exhibit B shall be prominently posted at all entrance and exit points at the GardenWalk Parking Facility.  Agreement  ¶ 8(a).  The Short-Form Notice identifies a website URL and a telephone number, each of which Settlement Class members may use to obtain the full Long-Form Notice, should they so desire.  The website on the internet shall contain a description of the Settlement terms and will also provide a viewable and printable Long-Form Notice which shall be in the form attached to the Agreement as Exhibit C, and an Opt-Out Form which shall be in the form attached to the Agreement as Exhibit D.  Agreement  ¶ 8(b).

• Settlement Class members will have sixty (60) days (commencing on the date the Short-Form Notice is first posted at the GardenWalk Parking Facility) to exclude themselves from the Settlement by returning to counsel for One Parking, by postal mail, a fully completed and signed Opt-Out Form in the form attached to the Agreement as Exhibit D.  Agreement  ¶ 13.

• Class Counsel will apply to the Court for an award of $125,000 in attorney's fees and costs, payable by One Parking.  Agreement ¶ 12.

• Class Counsel will apply for a service award (incentive payment) of $5,000 to the named Plaintiff, payable by One Parking, to compensate Plaintiff for his services as the Class Representative.  Agreement  ¶ 11.

• The Settlement will be self-administered by the Parties, with the Parties handling opt-outs and objections, and Class Counsel handling calls and other communications from Settlement Class members.

## V.    THE SETTLEMENT CLASS

In reviewing a class action settlement, a "district court must assess whether a class exists."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).   The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  Under these governing standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

### A.    <u>Numerosity</u>

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."  In determining whether joinder would be impracticable, a court may consider not only the number of class members, but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits."  *Wang v. Chinese Daily News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005).  "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable."  *Jordan v. Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982).

In *Jordan*, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64, and 71 were large enough such that the other factors need not be considered.  *Ibid.*  "The fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class."  *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (D.C. N.Y. 1982); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact number of class members, but demonstrated that class would "obviously be sufficiently numerous").

1    Here, although the exact size of the class is not known, the sheer number of

2 potential class members easily surpasses the class sizes in *Jordan* which the Ninth

3 Circuit deemed satisfied the numerosity requirement.  Again, One Parking estimates

4 that 4,752 to 5,483 debit and credit card receipts may have been printed at the

5 GardenWalk Parking Facility which may contain more than the last 5 digits of the

6 card number.  Rodriguez Declaration ¶ 4.

7    The fact that, by the very nature of the Settlement Class, its members are

8 unknown and cannot be readily identified, further dictates that joinder is

9 impracticable.  *Jordan*, 669 F.2d at 1319-1320.

10   **B.   Commonality**

11   Rule 23(a)(2) requires that there be "questions of law or fact common to the

12 class."  This commonality requirement must be "construed permissively."  *Hanlon v.*

13 *Chrysler Corp.*, 140 F.3d 1011, 1019 (9th Cir. 1998)  Plaintiffs need not demonstrate

14 that all questions of fact and law are common.  "The existence of shared legal issues

15 with divergent factual predicates is sufficient."  *Ibid*.  Where a class is united by a

16 common interest in determining whether a defendant's broad course of conduct is

17 actionable, commonality is not defeated "by slight differences in class members'

18 positions."  *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  Commonality

19 cannot be disputed here.

20   All Settlement Class members share two common legal questions – whether

21 One Parking violated FACTA by printing more than the last 5 digits of credit or

22 debit card numbers on customer receipts, and whether that violation was willful.

23 Any factual variations among Settlement Class members, such as differences in the

24 number of transactions they engaged in or which credit or debit cards they used,

25 have no bearing on these common legal questions.  All Settlement Class members

26 share the common interest of determining whether the same receipt-printing practice

27 at the GardenWalk Parking Facility was unlawful and whether they are entitled to

28 statutory damages for One Parking's allegedly willful violations.  *Tchoboian v.*

*Parking Concepts, Inc.*, 2009 WL 2169883 (C.D. Cal. 2009) *5 ("The overriding legal issue is whether [defendant']s alleged noncompliance was willful so that the class members are entitled to statutory damages.  Moreover, whether [defendant] violated FACTA is a combined question of law and fact common to all members.")

## C.   <u>Typicality</u>

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims ... of the class."  Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Hanlon*, 150 F.3d at 120.  Named plaintiffs need not be "identically situated" with all other class members; rather, "[i]t is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief."  *Cal. Rural Legal Assistance, Inc. v. Legal Sevs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).  Moreover, typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Ibid*.

Here, Plaintiff and all other Settlement Class members allege the same injury, violation of their legal rights and increased risk of identity theft, resulting from the same course of conduct—the printing of more than the last 5 digits of credit or debit card numbers on customer receipts issued to them.  Accordingly, this lawsuit is based on conduct which is not unique to Plaintiff, but on a course of conduct that is common to all Settlement Class members.  All Settlement Class members also seek the same relief, specifically, statutory damages under 15 U.S.C. § 1681n, the remedial provision of the Fair Credit Reporting Act ("FCRA") which applies to FACTA.  Accordingly, the typicality requirement is satisfied. *Tchoboian*, 2009 WL

2169883 *5 (C.D. Cal. 2009) (holding that typicality is satisfied because "[Plaintiff]'s claim is, in fact, 'substantially identical' to the claims of the proposed class members-namely, he alleges that [defendant] issued him a noncompliant receipt in willful violation of the FACTA"); *Murray v. GMAC Mortgage Corp.*, 2007 WL 1100608 *5 (N.D. Ill. 2007) ("Murray II") (typicality satisfied where, despite minor factual discrepancies, all putative class members had "the same essential characteristics"); *In re Activision Securities Litigation*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (finding that "the only material variation among class members is the amount of damages to which each member is entitled" and that "[s]uch differences are insufficient to defeat class certification.")

### D.   <u>Adequate Representation</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."   Adequate representation turns on whether the named plaintiffs and their counsel "have any conflicts of interest with other class members," and whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class."  *Hanlon*, 150 F.3d at 1020.

Here, there are no conflicts of interest between Plaintiff and Settlement Class members.   Given the similarity of the claims asserted and remedies sought by Settlement Class members in this case, it is hard to imagine how there could be any conflicts.   One Parking has no basis for asserting against Plaintiff any unique defenses that One Parking could not assert against any other Settlement Class member.   Nor does One Parking, which has already taken Plaintiff's deposition, have any basis for suggesting that Plaintiff lacks sufficient zeal or competence.

Nor are their any conflicts with Plaintiff's counsel.   One Parking cannot dispute that Plaintiff's counsel, who has substantial class action experience and has handled many other FACTA lawsuits, can adequately represent the Settlement Class.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,*

*Inc.*, 244 F.3d 1152, 1162 (9ᵗʰ Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

### E.   Rule 23(b)(3) Requirements Are Met

#### 1.   Predominance of Common Questions

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.  Central to this question "is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9ᵗʰ Cir. 2001).  In this case, whether One Parking violated FACTA intentionally or recklessly (which suffices for willfulness) is the central issue that clearly predominates over any individual issues. Considerations of judicial economy obviously favor litigating this common issue once in a class action instead of many times in separate suits.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F. 3d at 1022.

#### 2.   Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alterative methods for adjudicating the parties' claims.  Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement.  "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163; *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9ᵗʰ Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

1    In *Culinary/Bartender Trust Fund*, the Ninth Circuit held that a class action

2  met the superiority requirements of Rule 23(b)(3) where class members could

3  recover, at most, damages in the amount of $1,330.   Here, class members can

4  recover, at most, statutory damages in an amount between $100 and $1,000 per

5  violation.   As in *Culinary/Bartender Trust Fund*, "this case involves multiple claims

6  for relatively small sums" and a class action clearly serves as the only method that

7  would "permit the plaintiffs to pool claims which would be uneconomical to litigate

8  individually."   *Id*. at 1163 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,

9  809 (1985)).   *Culinary/Bartender Trust Fund* clearly dictates that the superiority

10  requirements of Rule 23(b)(3) are satisfied here.

11    Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion.

12  Ordinarily, these factors are (A) the interest of members of the class in individually

13  controlling the prosecution or defense of separate actions; (B) the extent and nature

14  of any litigation concerning the controversy already commenced by or against

15  members of the class; (C) the desirability or undesirability of concentrating the

16  litigation of the claims in the particular forum; and (D) the difficulties likely to be

17  encountered in the management of a class action.   However, when a court reviews a

18  class action settlement, the fourth factor does not apply.   In deciding whether to

19  certify a settlement class action, a district court "need not inquire whether the case,

20  if tried, would present intractable management problems."   *Amchem Products Inc. v.*

21  *Woodward*, 521 U.S. 591, 620 (1997).   The remaining factors set forth in Rule

22  23(b)(3)(A), (B) and (C) all favor class certification in this case.

23    First, Settlement Class members have no particular interest in individually

24  controlling the prosecution of separate actions.   Statutory damages cannot exceed

25  $1,000.   Any Settlement Class member who wants to pursue actual damages greater

26  than $1,000 can opt out of the Settlement.

27    Second, Plaintiff is not aware of - and One Parking has not suggested - any

28  competing litigation regarding the statutory violations at issue.

1    Finally, it is desirable to concentrate the issues in this forum because the
2  Parties reside in California and One Parking violated FACTA at the GardenWalk
3  Parking Facility in Anaheim, California, within this district.   Instructively, One
4  Parking has not moved to transfer venue to another district.   Moreover, the parties
5  have reached a Settlement.   "With the settlement in hand, the desirability of
6  concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of*
7  *Iowa*, 1998 WL 133747 *19 (M.D. Fla. 1998); *Strube v. American Equity Life Ins.*
8  *Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors
9  are "conceptually irrelevant in the context of a settlement").

10    The conclusion is inescapable that there simply is no better method than a
11  class action for resolving all the claims of the Settlement Class members in this
12  case.   The conclusion of the court in *Murray II*, where the court certified a case
13  involving claims for statutory damages under the FCRA, applies equally here:

14    "This is a case where class certification presents the most efficient
15    means of adjudicating the controversy.   The class is numerous but the
16    potential recovery for each class member is quite small.   Indeed, it is
17    exceedingly unlikely that many individuals would wish to go to court
18    for a potential recovery of $100-or that they could find counsel willing
19    to represent them." *Murray II*, 2007 WL 1100608 *7.

20

21  **VI.    THE TWO-STEP APPROVAL PROCESS**

22    There is a "strong judicial policy that favors settlements," particularly in class
23  actions and other complex cases where substantial resources can be conserved by
24  avoiding the time, cost, and rigors of continued litigation. *Class Plaintiffs v. City of*
25  *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Pacific Enters. Sec. Litig.*, 47 F.3d
26  373, 378 (9th Cir. 1995).

27    A settlement of class litigation must be reviewed and approved by the Court.
28  FRCP Rule 23(e).   This is done in two steps: (1) an early (preliminary) review by

1 the trial court, and (2) a final review after notice has been distributed to the class
2 members for their comment or objections.  This Motion concerns the first step.

3      "The first step is a preliminary, pre-notification hearing to determine whether
4 the proposed settlement is 'within the range of possible approval.'" *Armstrong v.*
5 *Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir.
6 1980) (quoting Manual for Complex Litigation § 1.46, at 53-55 (West 1977)).  The
7 purpose of this hearing is "to ascertain whether there is any reason to notify the class
8 members of the proposed settlement and to proceed with a fairness hearing."  *Ibid.*
9 "[I]f the proposed settlement 'appears to be the product of serious, informed, non-
10 collusive negotiations, has no obvious deficiencies, does not improperly grant
11 preferential treatment to class representatives or segments of the class, and falls
12 within the range of possible approval, then the court should direct that the notice be
13 given to the class members of a formal fairness hearing.'" *In re Portal Software, Inc.*
14 *Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794 at 14-15 (N.D. Cal. June 30, 2007)
15 (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

16      At the second step of the approval process (usually referred to as the fairness
17 hearing or final approval hearing), after class members have been notified of the
18 proposed settlement and have had an opportunity to be heard, the court makes a
19 final determination whether the settlement is "fair, reasonable and adequate" under
20 Rule 23(e).  *Armstrong*, 616 F.2d at 314.

21      Thus, the preliminary approval of the trial court is simply a conditional
22 finding that the settlement appears to be within the range of acceptable settlements.
23 As Professor Newberg comments, "The strength of the findings made by a judge at
24 a preliminary hearing or conference concerning a tentative settlement proposal may
25 vary.  The court may find that the settlement proposal contains some merit, is
26 within the range of reasonableness required for a settlement offer, or is
27 presumptively valid subject only to any objections that may be raised at a final
28 hearing." *Newberg on Class Actions*, 4th Ed., § 11:26.

## VII.   THE PRESUMPTION OF FAIRNESS

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.   In short, there is a presumption that the negotiations were conducted in good faith.  *Newberg*, § 11:51, *In re Chicken Anti-Trust Litigation*, 560 F.Supp 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.   *Hammon v. Barry*, 752 F.Supp 1087, 1093 (D. D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471, 474 (S.D. N.Y. 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571, 573-574 (E.D. Pa. 1978); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

While the recommendations of counsel proposing the settlement are not conclusive, the Court should take them into account and afford them "great weight," particularly where, as here, they are capable and competent, have experience with this type of matter, and have been extensively involved in this litigation.  *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. [citation.]  This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"); *See also Newberg*, § 11:47.

An additional compelling fact in this case is that the Settlement (particularly the benefits to the Settlement Class) was reached with the assistance of Magistrate Judge Goldman.  Yedalian Declaration ¶¶ 2-6.

## VIII.  THIS SETTLEMENT IS FAIR AND REASONABLE

The Settlement is well within the range of reasonableness and preliminary approval should be granted.  No single criterion determines whether a class action settlement meets the requirements of Rule 23(e).  In connection with final approval determinations, the Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *Staton*, *supra*, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "one factor alone may prove determinative in finding sufficient grounds for court approval."  *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'"  *Officers for Justice,* 688 F.2d at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole."  *Staton*, 327 F.3d at 961.  As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Officers for Justice,* 688 F.2d at 625.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement unless the settlement provisions clearly suggest the possibility that class interests gave way to self interest.  *Staton*, 327 F.3d at 961.

1    Some of the factors which were considered in evaluating the reasonableness of this
2    Settlement are as follows:

3              **A.      <u>Risks of Continuing Litigation</u>**

4          Absent this Settlement, there are very real risks involved in continued
5    litigation, including extensive delays, potential appeals and the possibility that
6    Settlement Class members may ultimately end up with no recovery.   Yedalian
7    Declaration ¶ 8.

8              **1.      "Willfulness"**

9          In order to recover any statutory damages and other remedies under 15 U.S.C.
10   § 1681n, Plaintiff must show that One Parking engaged in "willful" conduct.
11   However, the One Parking defendants have vigorously denied that their conduct was
12   willful.

13         For example, One Parking has asserted that (1) another entity installed and
14   programmed the machines that printed the receipts at issue; (2) that such took place
15   before One Parking began its management of the GardenWalk Parking Facility; (3)
16   that only 4 (not all) of the machines at the GardenWalk Parking Facility printed the
17   receipts at issue; and (4) the printing of excess digits was due to a programming
18   error.  Rodriguez Declaration ¶ 3.

19         Regardless of how strongly Plaintiff may feel about One Parking's conduct,
20   the Parties face novel issues concerning the interpretation of FACTA and how the
21   legal requirements for a "willful" violation of FACTA will be applied to the
22   particular facts of this case.  Although many FACTA lawsuits have been filed to
23   date, the law regarding FACTA is still in the nascent stage of development.
24   Yedalian Declaration ¶ 9.

25             **2.      Class Certification**

26         One Parking has denied that for any purpose other than that of settling this
27   lawsuit, this action is appropriate for class treatment.  Agreement ¶ 4.  Before the
28   Ninth Circuit decided *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 717

(9th Cir. Sept. 27, 2010) the overwhelming majority of district courts within the Central District of California had previously denied class certification in FACTA cases.  Absent a settlement in this case, class certification remains a hotly contested matter.   While Plaintiff reasonably believes he may overcome any defense arguments concerning class certification, there are risks attendant in continued litigation of these issues, including, at a minimum, delays and potential appeals. Yedalian Declaration ¶ 11.

### 3.   Constitutional Challenges

The One Parking defendants have made, and have threatened to continue to make, constitutional challenges to the statutory damages available under FACTA. These challenges included the theory that the total aggregate statutory damages potentially available against One Parking in this case are excessive and unconstitutional, as well as the theory that the statutory damages potentially available are disproportionate to the harm suffered by any Settlement Class member (arguing that no Settlement Class member has suffered any "actual harm" nor has "standing").  Yedalian Declaration ¶ 12.

Again, Plaintiff reasonably believes that he may overcome any such defense arguments particularly given the outcome of the *Bateman* case.  However, given the uncertainty facing such challenges, there are real and substantial risks involved in litigating such arguments to conclusion, not to mention the obvious delays that would be occasioned by continued litigation of such issues.  Yedalian Declaration ¶ 12.

### B.   Substantial Benefits of Settlement Compared to the Risks of Continued Litigation

The Settlement provides for substantial benefits without requiring any Settlement Class member to present an offending receipt or make a written claim.

As a result of the Settlement, One Parking will provide 17 days of free parking to the general public at the GardenWalk Parking Facility.  Agreement  ¶

7(a).  There are a total of 2,606 parking spaces at the GardenWalk Parking Facility, at least 2,300 of which will be made available for parking to the general public on each of the free parking days.  Agreement  ¶ 7(a).  There is absolutely no proof or claim requirement to obtain the free parking benefit and spaces will be permitted to fill on a first-come-first served-basis until they are occupied and be permitted to be re-filled on a first-come-first-served basis as vacancies occur.  Agreement  ¶ 7(a). Absent the Settlement, the regular daily maximum parking charge is $24.00. Rodriguez Declaration ¶ 6.

Consumer class action cases which require class members to make a claim, usually result in low claims rates (claims rates of less than 1% are not uncommon). (Yedalian Declaration ¶ 13.)  Moreover, many claims processes require class members to submit proof that they are a part of the respective class.  By negotiating a Settlement which does not require any proof (such as a credit/debit card receipt from the parking facility, which in most instances class members are unlikely to have retained, particularly for transactions occurring as early as July 1, 2010) nor the submission of a claim form, this Settlement eases the path for obtaining benefits and better ensures that the benefits will be conferred to a greater number of Settlement Class members.  (Yedalian Declaration ¶ 13.)

Although the free parking benefit has a maximum value of $24 as the regular daily maximum parking charge, Settlement Class members may use the benefit more than once per each free parking day, and during every single one of the 17 free parking days, should any of them so desire.  However, even a single entry's maximum value is a significant benefit given the particular facts of this case, including the fact that there is no known customer to have suffered identity theft as a result of the alleged FACTA violations.

"The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, *supra*, 688 F.2d at 625.  Moreover, as long as the Settlement is

reasonable, it does not matter that under the best case scenario, the potential value of the case may be much higher.  *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*, 2005 WL 1594403, *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of shareholder class actions were between 2% - 3% of possible damages).

Another benefit of this lawsuit and Settlement is the fact that the GardenWalk Parking Facility ceased printing more than the last 5 digits of credit and debit card numbers on customer receipts (Rodriguez Declaration ¶ 3), and, notwithstanding their ongoing denial of wrongdoing, both of the One Parking defendants have also agreed that they shall implement a written policy stating they will not print more than the last five digits or expiration date of a credit or debit card on any printed receipt provided to a customer of the GardenWalk Parking Facility (Agreement ¶ 7(b)).  The Settlement ensures that the One Parking defendants will not continue to violate the law, willfully, inadvertently or otherwise.  Such nonmonetary benefits are properly considered in judging the results of the Settlement.  *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the defendant stopped the practices at issue).

**C.**  **Agreement Provides That Change Of Law Before Final Approval of Settlement Will Not Compromise Settlement Class Members' Benefits**

A further benefit of the Settlement assures that if there is an intervening change, modification, reversal or clarification of the law relating to FACTA, or any outcome of *First American Financial Corporation, et al., v. Denise P. Richards, et al.*, United States Supreme Court No. 10-708, that may otherwise affect the Settlement before final approval is granted, such shall not affect the Settlement and its validity and enforceability.  Agreement ¶ 17.

**D.** **The Settlement Is The Product of Extensive Arm's-Length Negotiations**

The Agreement, attached hereto as Exhibit 1, and its corresponding exhibits are the product of extensive, adversarial, arm's-length discussions, negotiations, correspondence, factual and legal investigation and research, and careful evaluation of the respective Parties' strengths and weaknesses.  Yedalian Declaration ¶ 16.

## IX.   THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice that is practicable under the circumstances."  Rule 23(c)(2)(B) does not require actual notice or that a notice be actually received.  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

One Parking does not know, nor does One Parking have access to any information which would enable One Parking to determine, the identities of absent Settlement Class members.  Rodriguez Declaration ¶ 7.  The Parties have therefore agreed that notice to the Settlement Class members will be given in the following ways:

**Short-Form Notice**

A Short-Form notice in the form attached to the Agreement as Exhibit B shall be prominently posted at all entrance and exit points at the GardenWalk Parking Facility.  Agreement ¶ 8(a).

The Short-Form Notice identifies a website URL and a telephone number, each of which Settlement Class members may use to obtain the full Long-Form Notice, should they so desire.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**Settlement Website Notice, Long-Form (Full) Notice, and Opt-Out Form**

A website will be made available on the internet which shall contain a description of the Settlement terms and will also provide a viewable and printable Long-Form Notice which shall be in the form attached to the Agreement as Exhibit C, and an Opt-Out Form which shall be in the form attached to the Agreement as Exhibit D.  Agreement ¶ 8(b).

In a case like this, where neither the names nor addresses of Settlement Class members can be ascertained despite reasonable effort, notice by publication and website clearly suffices. *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (notice by publication and website adequate where individual notice impossible; also recognizing increasing importance of website notice as a substitute form of notice); *Battle v. Liberty National Life Ins. Co.*, 770 F.Supp. 1499, 1515, fn.47 (N. D. Ala. 1991) (individual notice not required where absent members are not identified and cannot be located through diligent efforts) *affirmed*, 974 F.2d 1279 (11th Cir. 1992.  Posting of notices at the GardenWalk Parking Facility, which targets Settlement Class members who frequent the facility, its attendant mall, and nearby attractions (such as Disneyland and the Anaheim Convention Center), leaves no room for doubt that the Parties have agreed to provide the "best notice that is practicable under the circumstances."

Apart from the manner of notice, Rule 23(c)(2)(B) also sets forth requirements regarding the content of the notice. The notice must clearly and concisely state in plain, easily understood language:

- the nature of the action;
- the definition of the class certified;
- the class claims, issues, or defenses;
- that class members may enter an appearance through counsel if a member so desires;
- that the court will exclude from the class any member who requests exclusion,

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    stating when and how members may elect to be excluded; and

2    • the binding effect of a class judgment on class members under Rule 23(c)(3).

3    Here, the proposed notices fully comply with Rule 23(c)(2)(B).   Courts

4    routinely approve class notices even when they provide only general information

5    about a settlement.   *See, e.g., Mendoza v. United States*, 623 F.2d 1338, 1351 (9th

6    Cir. 1980) ("very general description of the proposed settlement" sufficient); *In re*

7    *Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D. N.Y. 1993) (notice

8    "need only describe the terms of the settlement generally.")   The class notices here

9    provide more than adequate notice about the Settlement.

10

## X.   MODEST   ATTORNEY'S   FEES   WILL   BE   SOUGHT   IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

13   At the time of final approval of the Settlement, Class Counsel will request an

14   award of attorney's fees and costs in the amount of $125,000 (Agreement ¶ 12)  to

15   compensate Class Counsel for fees and costs incurred in prosecuting the lawsuit,

16   negotiating the Settlement, drafting the Settlement documents, attempting to obtain

17   the Court's preliminary and final approval of the Settlement, and ensuring that the

18   Settlement is properly administered and implemented through the Parties' agreed

19   upon self-administration process.  Yedalian Declaration ¶ 21.

20   While, in connection with final approval, Class Counsel intends to

21   substantiate these fees by providing a detailed account of time devoted to this case,

22   through declaration testimony and otherwise, there are a few things worth

23   mentioning now concerning fees.

24   First and foremost, it should be pointed out that Class Counsel negotiated and

25   secured the benefits to the Settlement Class before engaging in any negotiation with

26   the defense about attorney's fees.  Yedalian Declaration ¶ 23.  Moreover, the fees

27   requested represent an amount which is less than the combined amount of Class

28   Counsel's lodestar already devoted and, through final approval, etc., is estimated to

be continued to be devoted to this matter.  Yedalian Declaration ¶ 24.  It should also not be lost on the Court that as a result of the time committed by Class Counsel to this matter, Class Counsel was precluded from taking on other matters which were available.   Yedalian Declaration ¶ 24.

Further, the amount that will be saved by the self-administration of the Settlement, rather than hiring a third-party settlement administrator, is estimated at $25,000.  Yedalian Declaration ¶ 25.

Additionally, these amounts do not take into account the fact that the GardenWalk Parking Facility ceased printing more than the last 5 digits of credit and debit card numbers on customer receipts (Rodriguez Declaration ¶ 3), and, notwithstanding their ongoing denial of wrongdoing, both of the One Parking defendants have also agreed that they shall implement a written policy stating they will not print more than the last five digits or expiration date of a credit or debit card on any printed receipt provided to a customer of the GardenWalk Parking Facility (Agreement   ¶ 7(b)).   The Settlement ensures that the One Parking defendants will not continue to violate the law, willfully, inadvertently or otherwise. *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the defendant stopped the practices at issue and explaining that "'Attorneys' fees [in class action cases] may be awarded even though the benefit conferred is purely non-pecuniary in nature.'").

Again, Class Counsel will address these issues in further detail when requesting fees in connection with final approval, but believed it was important at this juncture to at least provide the Court with a basic summary of the rationale and reasons for the requested fee amounts.

Class Counsel has borne, and continues to bear, the entire risk of litigation associated with the lawsuit on a pure contingency basis.  Yedalian Declaration ¶ 28. The factual and legal issues posed in the lawsuit were highly disputed, and there

were also risks as to whether or not a class would be certified and, if certified, whether a judgment would be favorable.   The unsettled constitutional issues concerning FACTA's statutory damages presented additional issues and posed additional risks.  Yedalian Declaration ¶ 28.

The fees that will be requested in connection with final approval are justified by the results achieved, the significant time incurred and risks undertaken by Class Counsel.  Yedalian Declaration ¶ 29.

## XI.   A MODEST ENHANCEMENT AWARD WILL BE SOUGHT FOR THE NAMED PLAINTIFF IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

At the time of final approval of the Settlement, Class Counsel will request, on behalf of the named plaintiff, Brent Sakamoto, an incentive award of $5,000 (Agreement ¶ 11), payable by One Parking, to compensate him for his services as the representative of the Settlement Class.   Plaintiff was subjected to intrusive discovery, risked liability for defense costs in the event the litigation was unsuccessful and, contributed valuable time and resources during the pendency of the litigation, all of which will be further detailed in connection with final approval proceedings.  Yedalian Declaration ¶ 30.   Defendants do not oppose the requested incentive award to the named Plaintiff and have agreed to pay it.  (Agreement ¶ 11.)

Incentive payments serve to reward named plaintiffs for the time and effort expended on behalf of the class, and for exposing themselves to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001).  In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and

1  taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at
2  694.

3      Here, there is only one class representative, and the requested enhancement
4  award in the amount of $5,000 is modest, reasonable, and should be approved in
5  connection with final approval. Yedalian Declaration ¶ 31.

6

7  **XII.  CONCLUSION**

8      The proposed class action Settlement is well within the range of reasonable
9  settlements. It is non-collusive, and it was achieved as the result of informed,
10 extensive, and arm's-length negotiations conducted by experienced counsel.

11      Plaintiff respectfully requests that the Court grant preliminary approval of the
12 proposed settlement, sign and enter the proposed Order, and set a final approval
13 hearing approximately 90 days after the Court grants preliminary approval of the
14 Settlement.

15                         Respectfully submitted,

16

17 Dated:  March 5, 2012          CHANT & COMPANY
                                  A Professional Law Corporation
18

19

20                               By: _/S/ – Chant Yedalian_____
                                     Chant Yedalian
21                                   Counsel for Plaintiff Brent Sakamoto
22
23
24
25
26
27
28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT